Case for argument. Case number 19-3225, Western Missouri, United States v. Kenneth Friend. Very well, Ms. Carlisle, we'll hear from you first. May it please the court, I'm here on behalf of Kenneth Friend to talk this morning about the Wiretap Act. The issue of this case is actually pretty simple. Everyone agrees that the four wiretap orders in this case did not contain a piece of information required by the wiretap statute. That piece of information being the identity of the person authorizing the application. So the only question before this court is whether that defect can be excused or whether under section 2515 the evidence derived from the wiretaps must be excluded. Are you sure everyone agrees that the identity is not included? If you adopt the Brunson rationale, the name isn't required. Identity could be included if the person is identified sufficiently. I agree that that's what Brunson says. I mean, for a number of reasons I don't think this court should consider Brunson as controlling. I know that, but you said everybody agrees. I thought Mr. Eggert sent a letter saying he agreed with Brunson. I just don't want to start with everybody agrees with something that's disputed. Go ahead. First of all, I think everyone does agree that the name John Smith or whoever it was that does the failure to say John Smith render the order facially insufficient. The government had previously argued that it wasn't facially insufficient because the order said that the court had considered the application and the application, in fact, included an affidavit that gave the name. Even before Brunson or Dada, the court in Scurry had said that doesn't make any sense. A document can't be facially insufficient if you can only find out what it's supposed to have in it by looking at other documents. Would it be insufficient if it said the Attorney General? It would not be insufficient according to Scurry if it said the Attorney General. I'm not sure whether I agree that it wouldn't according to Dada, but there's an important difference between Brunson in this case that frankly I failed to mention in my response to the 28J letter, and I need to mention it now because I think it's really central. The orders in Brunson were different than the orders in Friend because according to the Brunson opinion, and I will say I didn't go back and look at the orders, but according to the Brunson opinion, each order identifies as the authorizing official the Assistant Attorney General who signed off on the application leading to the issuance of the order. It didn't give his name, but it said this was authorized by the Assistant Attorney General who signed the application. The Friend orders don't say that. They just say pursuant to an application authorized by a Deputy Assistant Attorney General who's been specially designated, quotes the statutory language. They don't refer to a particular person, and the problem there is that if you just read that, then that could refer to any number of people, and that was the problem in Scurry, and I don't think Brunson solves it and I certainly don't think Dada does. So what we have here is an order, four orders actually that say that some authorized person authorized this application, but don't, even within the context of the order, purport to designate a particular person. So I think that's an important point. Why doesn't it designate the person who signed the application when it says pursuant? Because it doesn't say that, Your Honor. In fact, it says it's ordered you can do this pursuant to an application authorized by a Deputy Assistant AG. Doesn't that mean that we're talking about the deputy who authorized the application? Well, I think the problem is if you look at the four corners, you shouldn't have to make inferences from the four corners about which Deputy Attorney General the judge was referring to. Now, the judge in Brunson made a particular reference to the Attorney General who signed the application. The judge in Friend never did that, and even the court in Brunson at the end says, you know, you really ought to put the name in. And I think the dissenting judge is quite clear that if you don't put the name in, you're stuck. So, I mean, I don't think Brunson really, you know, it's really a case that we need to say definitely. The reason I asked about Attorney General is I wondered whether you thought that was invalid because one would have to go outside the four corners to see who was the Attorney General as of the date of the order. Well, the issue that the Scurry case seemed to say, I mean, frankly, I think so, yes. I think what it really ought to say is John Smith. But I would also say that I think the Scurry case and the Brunson case still don't fix Friend, even if you have a less restrictive view, because they both said it would be okay if you could tell from the order which particular person was being referred to. And that just doesn't happen in those Friend orders. What all the Friend orders say is this application was authorized by somebody who can authorize applications, or I mean, specifically an Assistant Attorney General who can authorize applications. But there are a number of those. And in fact, in the Friend orders, there were some different ones. So you really, I think if you're trying to say, does this order qualify, satisfy the requirements of the Wiretap Act, specifically 2518.4, it does not include information about who authorized the application. Is the Leon good faith rule potentially applicable in this kind of case? No. And the reason it's not is for two reasons. First of all, I don't think, I mean, I think arguing that there's good faith here is a little bit of a stretch. We're not talking about a policeman who gets a warrant and executes it. We're talking about lawyers and judges who are supposed to read statutes. So to say they made this good faith mistake reading the statute four times so they should be excused, I think is hard. But the other thing is that in Leon, what the court did was to say, we are making a judicially created exception to the judicially created doctrine of the exclusionary rule. Here, the court would be making a judicially created exception to a statute. Well, don't we have cases that apply to Leon and these kinds of circumstances? Well, I think the only case that I know that does is Brunson. What about the Moore case? What about the Moore case? In the Moore case, I frankly, I don't remember whether that the Moore case did apply the good faith exception, but the Moore case did not concern a defect in something that was specifically required under the statute. The issue in the Moore case was that the order was unsigned and they said, well, that doesn't render the order facially invalid under the statute anyway. So this is a situation where we have an order that's facially invalid under the statute, positing that for a moment. And what the court is being asked to say is, well, we the court can decide that even though the statute says that, we can come up with an exception that will allow this to go through. And again, the Brunson case talks a little bit about how the Senate report says we don't want to change existing law, but the Senate report was in 1968 and Leon wasn't decided until 1984. So the Senate was clearly not thinking about Leon at that point. So that's why Leon doesn't apply. And I think I'd like to save my other 55 seconds for rebuttal if that's all right. Seeing no questions, that would be fine. Thank you for your argument. Mr. Eggert, we'll hear from you. Thank you, your honors. Your honors, the government takes three positions here that we outlined in our brief, and I'll go through them quickly and then answer any questions you might have. First, we don't believe that there is a facial identification effect in this court. As was already indicated by a question that took place with our previous counsel, the identity of the person is what is required by the statute. It doesn't say the name. It says identity. If the drafters of the wiretap statute had required the name, they could have put that in the statutory language. They did not. They put identity. Just a second. Ms. Carlisle, would you mute your microphone? Oh, sure. I'm sorry. Go ahead. Thank you, Judge Colleton. So there is a specific issue concerning how we interpret the statute itself. Secondly, when you look at the order that was applied in this case that the judge signed, you can look at the four corners of the document and readily ascertain that a person from the Department of Justice, a deputy assistant attorney general, approved the application, approved the application of the order being submitted to the court, and that's referenced in the document itself. Further, the document, the order, references the fact that there was an application. The district court judge, and I've referenced this on page 8 of my brief, the district court judge stated in the order it gave full consideration to the matter set in the application and it also indicated that a properly designated DAG, deputy assistant attorney general, reviewed the application and approved it. There is no dispute, and even the defense here, excuse me, the appellate here would agree, there is no dispute that the judge in this case knew full well that this document had went through the approval process as specified by the wiretap statute. That's what the wiretap statute is designed to do, to ensure that there is buy-in on this extreme measure of wiretap surveillance at the highest levels of the Department of Justice. And that happened here. But isn't there some concern with this type of expansive search and seizure that the person receiving the order be ensured that it is a valid order so that it's not just the judge but it's also the person receiving that order? That's a good question. That story does talk about that. Two responses to that, Judge Kelly. First, in this particular case, the drafting of the application and the order and the affidavit is done collectively by both the field agent and the assistant U.S. attorney as well as the people in Washington, D.C. So Scurry's first concern that, well, the field agent needs to know so they can preserve good faith. Well, the field agent in this case did know. They assisted in the drafting process. The next issue was the telecommunications official going down the chain. Would the telecommunications official have a right to know? Now, Scurry talks about this, but maybe I'm wrong, and you can correct me if I am. Scurry doesn't really cite any case law to support this position. This is logic that's applied by the judges at Scurry, saying the telecommunications officials need to have some sort of ability to determine whether or not the proper procedure should follow through the wiretap statute. Well, the telecommunications officials do have that assurance because the judge himself or herself has reviewed the order, has indicated the order as past muster, in fact references the application. If the wiretap official, for example, down the chain was really concerned about the provenance of the order, he could see in the order it references an application and an affidavit, and he could request that, and it could be provided if that was an issue. So I don't think Scurry's concerns that are articulated about people other than the judge knowing are really sufficient here to require us to suppress the evidence of this particular case. I think the identity of the approving official was made clear in the order itself. The next question is, let's say, for sake of argument, that Ms. Carlisle is correct and that the name should have been placed within the order. Well, even under DOTA, DOTA makes it quite clear that all defects do not require suppression. The issue is whether or not the order is sufficient. Sufficiency is the test now. DOTA got rid of the core concerns test and now replaces it with a sufficiency test or a deficiency test, depending on which particular phraseology you'd like to use. And the same application applies here. Is this document sufficient to prevent suppression? Now, you know, DOTA, they got rid of the core concerns test, but they still did not suppress the wire tap. They thought that that particular defect was not sufficient for suppression. Now, DOTA talks about, you know, sufficiency being that which is required. I'm paraphrasing the language. It's on a direct quote for DOTA. But the issue here is, did the order contain what was required to ascertain, for purposes of a fair reading of it, the name of the person, actually the identity of the person, excuse me, that approved the application or the order? And that is, the order does that. It does that, first of all, as I've already said, by the fact that it refers to the Department, the Deputy Assistant Attorney General approving the order. Secondly, it refers to the application, which has not only the name of the Deputy Attorney General in the application, but it has the actual authorization letter attached to the application. And those documents are and approve them. Everything that is necessary to ascertain and to assure that the wire tap statute was complied with is contained within that order. There is no dispute. How can you say it's all in the application? I'm getting some echo here. I think I understand your question. How can I ask, if I have to reference the application, how is it in the four corners of the document? Yeah, isn't that clear? Well, the four corners of the document, the issue is identifying the person, not the name of the person, just the identity of the person. And the document, the order itself, references the identity of the person approving the wire tap. And what I would also say further, kind and before DADA, all indicated, without really very little exception, that the name in the order is not essential or necessary if the name is also in the application. Now, some documents or some cases, as Ms. Carlisle rightly points out, talked about how the order was facially defective, but still was not eligible for suppression because the application contained the name. But there are some cases, for example, in Moore, which did, by the way, apply good faith very clearly. But Moore involved a case where the judge failed to sign the order altogether. Then you have cases like Radcliffe, where the order doesn't contain the name. You have Lomelli, which doesn't even contain the name in either the application or the order. And Lomelli says that's suppressible, because there's nowhere in either document that shows that the wire tap statutes provisions were complied with. But Lomelli further said, referring back to Radcliffe and some of these other cases and some of the other circuits, listen, if you look at the totality of the documents, we can clearly see that the wire tap statute was complied with and that there is no reason for suppression. It is sufficient. Now, I would agree with Ms. Carlisle that putting the name in the document is the best practice. And I think the Office of Electronic Operations has got that message. And I don't believe that this is going to be something that's going to be repeated in the future. So that goes to the third question. That's the question of good faith, which does apply in this case. The 8th Circuit has specifically extended good faith to wire tap cases under Moore. And I talk about that in great detail in the brief, talking about how Moore extends the wire tap, excuse me, extends good faith to wire tap statutes. So there's also some language itself, the historical history, the congressional history about the adoption of the wire tap statute. And it makes good sense to apply good faith to a case like this. Now, Ms. Carlisle does hurt me just a little bit by saying that, well, we should have known, we applied four times to this particular document, and somehow we are acting in bad faith because of that. Well, I just simply disagree. The law supported this particular type of application prior to Scurry. And even Scurry, in my opinion, isn't something that the 8th Circuit has to follow in this case. To suggest that the officers or the attorneys or the people at OEO somehow acted in bad faith because they had case law that would support these type of applications is really, I think, a little bit beyond the pale. In fact, I think what I quote, it's in a different context, but it's what I would like to end with, talks about this really particular issue concerning the suppression of evidence. And let's be clear about what's being asked here. This is a defendant who is clearly guilty who engaged in behavior that was captured by the wire tap. So the suppression of this evidence could lead to his release from prison. Now, we agree that that is necessary from time to time to ensure that police officers obey the law and follow the procedures set out. But in this case, law enforcement followed every procedure that they were supposed to follow to ensure that a wire tap was obtained. The only thing that they did not follow, if you were to take the argument of the defense counsel, is putting the name in the order. How would suppression deter bad behavior in this case? And it also would cost society by allowing suppression because you would let a guilty person likely walk free. And I'll conclude by just saying in Zaziba, it says that kind of systematic or reckless disregard for constitutional requirements, the marginal deterrence obtained by allowing suppression simply does not pay its way. I thank you for your time, your honors. Thank you. What was that? I was referring to Zaziba. It's actually located in my brief on page 37. It is a broad quote. I didn't have time to read the whole thing. It's quite instructive about the purposes of the exclusionary rule. Thank you, your honor. Thank you. All right. Ms. Carlisle, we'll hear from you and Rebel. Okay. It doesn't look like I've got any time. Let me just say quickly, first of all, I think what Dada says quite clearly is this isn't about, let's come out, let's see if this order comports with the policies of the Wiretapped Act. It's about, does this order comply with the statute? And what Dada says is when the order doesn't comply with the statute, you're done. And that I think is what Congress meant when they said quite specifically, if the order is insufficient on its face, it gets suppressed. So, I think that's why you don't get to say, well, if we had been Congress, we might have written this differently. That's what Dada says. And I guess the other, that may just be all I need to say at this point. Thank you. All right. Thank you for your argument. Thank you to both.